AF Approval  N.A.                                    Chief Approval   MPF

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 6:22-cr-148-PGB-LHP

JEFF JORDAN PROPHT-FRANCISQUE

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B.

Handberg, United States Attorney for the Middle District of Florida, and the

defendant, JEFF JORDAN PROPHT-FRANCISQUE, and the attorney for the

defendant, John Weekes, Esq., mutually agree as follows:

**A.**     **Particularized Terms**

1.     Counts Pleading To

The defendant shall enter a plea of guilty to Count One of the

Indictment.  Count One charges the defendant with RICO Conspiracy, in violation

of 18 U.S.C. § 1962(d).

2.     Minimum and Maximum Penalties

Count One is punishable by a maximum term of imprisonment of 20

years; a fine of not more than $250,000; a term of supervised release of not more

than 3 years, and a special assessment of $100 per felony count.

With respect to certain offenses, the Court shall order the defendant to

make restitution to any victim of the offenses, and with respect to other offenses, the

Defendant's Initials 

Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:    Two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity;

Second:    The unlawful plan affected interstate commerce;

Third:    The defendant knowingly and willfully joined in the conspiracy; and

Fourth:    When the defendant joined in the agreement, the defendant had the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

4.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this agreement.

5.   Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the United States Treasury, identity theft victims, and Certified Public Accounting or tax preparation firms that were unlawfully breached during the course of the conspiracy charged in Count One.

6.   · Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the

Defendant's Initials ⟨signature⟩                 3

Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 1963, whether in the possession or control of the United States, the defendant, or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any

Defendant's Initials ____        4

forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will

Defendant's Initials ( ____    5

not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be

Defendant's Initials _____        6

binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

9.    Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.



**B.**   **Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $200, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _____                    8

2. Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office

Defendant's Initials _____     9

within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared

Defendant's Initials ⟋𝒫⟍              10

by the United States Probation Office.  The defendant understands and
acknowledges that, although the parties are permitted to make recommendations and
present arguments to the Court, the sentence will be determined solely by the Court,
with the assistance of the United States Probation Office.  Defendant further
understands and acknowledges that any discussions between defendant or
defendant's attorney and the attorney or other agents for the government regarding
any recommendations by the government are not binding on the Court and that,
should any recommendations be rejected, defendant will not be permitted to
withdraw defendant's plea pursuant to this plea agreement.  The government
expressly reserves the right to support and defend any decision that the Court may
make with regard to the defendant's sentence, whether or not such decision is
consistent with the government's recommendations contained herein.

     7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

        The defendant agrees that this Court has jurisdiction and authority to
impose any sentence up to the statutory maximum and expressly waives the right to
appeal defendant's sentence on any ground, including the ground that the Court
erred in determining the applicable guidelines range pursuant to the United States
Sentencing Guidelines, except (a) the ground that the sentence exceeds the
defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the
United States Sentencing Guidelines; (b) the ground that the sentence exceeds the
statutory maximum penalty; or (c) the ground that the sentence violates the Eighth
Amendment to the Constitution; provided, however, that if the government exercises

Defendant's Initials _____        11

its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete

Defendant's Initials ⟨ ⟩            12

satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

    11.   Factual Basis

        Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _____        13

12.   Entire Agreement

This plea agreement, including Exhibit A, constitutes the entire

agreement between the government and the defendant with respect to the

aforementioned guilty plea and no other promises, agreements, or representations

exist or have been made to the defendant or defendant's attorney with regard to such

guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this 15th day of August , 2023.

ROGER B. HANDBERG
United States Attorney

_____
JEFF JORDAN PROPHT-FRANCISQUE
Defendant

_____
Dana E. Hill
Assistant United States Attorney

_____
John Weekes, Esq.
Attorney for Defendant

_____
Matthew J. Del Mastro
Special Assistant U.S. Attorney

_____
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

Defendant's Initials _____   14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:22-cr-148-PGB-LHP

JEFF JORDAN PROPHT-FRANCISQUE

PERSONALIZATION OF ELEMENTS

As to Count One:

First:     Between on or about December 21, 2015, and March 19, 2019,
           did two or more people agree to try to accomplish an unlawful
           plan to participate in the affairs of an enterprise through a pattern
           of racketeering activity?

Second:    Did the unlawful plan affect interstate commerce?

Third:     Did you knowingly and willfully join in the conspiracy?

Fourth:    When you joined in the agreement, did you have the specific
           intent to participate in the enterprise's affairs, knowing that other
           members of the conspiracy would commit at least two other acts
           of racketeering and intending to help them as part of a pattern of
           racketeering activity?



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-148-PGB-LHP

JEFF JORDAN PROPHT-FRANCISQUE

FACTUAL BASIS

On or about January 12, 2017, the server of an accounting firm in Orlando,

Florida, identified in the Indictment as Business-11, was breached, and the

personally identifiable information (PII) of Business-11's clients was thereafter stolen

from the server and then used to file false tax refunds with the IRS.  The FBI

initiated an investigation and identified a corrupt enterprise operating in the Middle

District of Florida and nationwide to obtain PII for the purpose of committing wire

fraud and mail fraud by submitting false tax refunds and retrieving the proceeds of

this offense.  The FBI determined that, from at least December 21, 2015, through at

least March 19, 2019, Defendant JEFF JORDAN PROPHT-FRANCISQUE, as

well as coconspirators MONIKA SHAUNTEL JENKINS, LOUISAINT

JOLTEUS, VLADIMYR CHERELUS, ALAIN JEAN-LOUIS, LOUIS NOEL

MICHEL, ANDI JUNIOR JACQUES, DICKENSON ELAN, MICHAEL JEAN

POIX, deceased conspirator "Rich4ever4430," and others were part of that unlawful

and corrupt enterprise involving the submission of false and fraudulent tax refunds

based on stolen PII ("Enterprise").  The FBI's investigation revealed the following

Defendant's Initials                 16

true facts about this Enterprise and PROPHT-FRANCISQUE's involvement in this Enterprise:

### *Propht-Francisque's Role*

In the course of this Enterprise, Defendant PROPHT-FRANCISQUE was a resident of Florida who accessed a dark web market that sold illegally obtained credentials of compromised computer servers ("Marketplace"). PROPHT-FRANCISQUE used the Marketplace to purchase credentials of compromised computer servers that were used to steal PII of taxpayers that PROPHT-FRANCISQUE and his coconspirators later used to file false and fraudulent tax returns. PROPHT-FRANCISQUE also used the Marketplace to steal Electronic Filing Identification Numbers ("EFINs") and Preparer Tax Identification Numbers ("PTINs") – credentials used by tax preparers to file tax returns – so that he and his conspirators could file fraudulent and false tax returns using the stolen PII ("Stolen EFIN-Filed Returns"). PROPHT-FRANCISQUE's conspirators also created new businesses purporting to be legitimate tax preparation firms and obtained real EFINs on behalf of these sham businesses that were then used to file fraudulent and false tax returns using the stolen PII ("Sham EFIN-Filed Returns"). PROPHT-FRANCISQUE also used stolen PII to file false and fraudulent tax returns as though they were submitted by taxpayers independently, not through a CPA or accounting firm ("Self-Prepared Returns"). PROPHT-FRANCISQUE and his conspirators additionally created and modified financial accounts used to receive the tax refunds obtained from the IRS when the fraudulently submitted returns were accepted.

Defendant's Initials ____        17

PROPHT-FRANCISQUE's coconspirators withdrew fraud proceeds from bank accounts created to receive the fraudulently obtained tax refunds as a result of the fraudulent and corrupt Enterprise.

PROPHT-FRANCISQUE worked directly with Rich4ever4430, MICHEL, and CHERELUS in furtherance of this unlawful Enterprise. PROPHT-FRANCISQUE worked indirectly and through other conspirators in this same corrupt Enterprise.

Each false tax return filed in the course of this corrupt Enterprise was filed with the intent to defraud as part of a scheme to defraud by using false or fraudulent pretenses or representations about material facts and through the use of communications transmitted via wires in interstate commerce.

On December 15, 2015, PROPHT-FRANCISQUE created an online account with the Marketplace with the username "moneybaby954." He linked the account to his email address, letssgogod1st@yahoo.com. PROPHT-FRANCISQUE used this Marketplace account to purchase stolen credentials for a server of a business in Arkansas.

On February 17, 2016, PROPHT-FRANCISQUE registered another account in the Marketplace with the username "moneybaby." He linked the account to another email address he controlled, letsssgogod1st@yahoo.com. PROPHT-FRANCISQUE used his "moneybaby" account to pay approximately $4,527 for stolen server credentials, including servers that belonged to CPA and tax preparation firms, such as the ones discussed below.

Defendant's Initials _____      18

On December 21, 2015, PROPHT-FRANCISQUE used his email, letssgogod1st@yahoo.com, to send Rich4ever4430 the EFIN and PTIN, and other PII for Person-7, the owner of Victim Firm-4, a tax preparation firm in Texas. Thereafter, beginning on February 13, 2016, PROPHT-FRANCISQUE's coconspirators used a sham fax preparation business they had created, Edvert Tax Prep (Edvert) filed eleven false tax returns using PII stolen from Victim Firm-4. The Enterprise also used the EFIN from Victim Firm-4 to file at least 160 false tax returns using PII stolen from other CPA or tax filing firms, including Victim Firm-8, a CPA firm in Arizona.

On February 6, 2016, Rich4ever4430 sent PROPHT-FRANCISQUE an email with a series of names, Social Security numbers, dates of birth, addresses, and W-2 tax information of various individuals, including Person-8, a client of Victim Firm-4, a tax preparation firm in Texas. Through Edvert, the Enterprise then used the PII of Person-8 to file a false return in his name under the PTIN of Person-2 on February 13, 2016. In January and February 2016, PROPHT-FRANSCISQUE received emails from TaxHawk and TurboTax stating that federal tax returns in the names of other individuals had been accepted.

PROPHT-FRANCISQUE and his coconspirators stopped using the EFIN of Victim Firm-4 on February 25, 2016. The next day, they started using the EFIN of Victim Firm-8 to file false tax returns using stolen PII. From February 26, 2016, through August 1, 2016, the Enterprise used the hijacked EFIN of Victim Firm-8 to file 296 false returns, claiming approximately $2.1 million in refunds.

Defendant's Initials _____        19

On January 20, 2017, PROPHT-FRANCISQUE paid $650 on the Marketplace to purchase the server credentials of Victim Firm-1, a CPA firm in New Jersey. From January 23, 2017, through March 15, 2017, PROPHT-FRANCISQUE and his conspirators used the hijacked EFIN of Victim Firm-1 stolen PII to file 331 fraudulent returns, claiming approximately $1.46 million in refunds.

On February 17, 2017, PROPHT-FRANCISQUE paid $1,455 on the Marketplace to purchase server credentials for Victim Firm-24, a CPA firm in Nevada. PROPHT-FRANCISQUE and his coconspirators then used the server credentials to steal the PII of Victim Firm-24's clients. The Enterprise then used that stolen PII, as well as PII stolen from other firms, to file false tax returns through Victim Firm-1's EFIN. Of the 331 fraudulent tax returns PROPHT-FRANCISQUE and his coconspirators filed through Victim Firm-1's EFIN, four involved PII stolen from Victim Firm-24, claiming refunds of $21,383.

The Enterprise also used the stolen PII from Victim Firm-24 to file false tax returns through another sham tax preparation business PROPHT-FRANCISQUE's coconspirators had created, named SC Accounting and Tax Services (SCA). Specifically, the Enterprise filed seven false returns claiming a total of $21,576 through SCA using PII from Victim Firm-24.

On the dates listed below in 2017, PROPHT-FRANCISQUE purchased the server credentials listed in the following table. Shortly thereafter, in an effort to obfuscate their illicit activity, PROPHT-FRANCISQUE and his coconspirators utilized those servers to access or modify Green Dot debit accounts the Enterprise

Defendant's Initials _____                    20

had created in the names of taxpayers whose PII had been exfiltrated from the servers of victim firms. The Enterprise then used Victim Firm-1's hijacked EFIN to file false returns in the names of those taxpayers so the claimed refunds could be diverted to the Enterprise.

| Server<br>Date of purchase | Green Dot Card number<br>Date of access through server | Date of Tax Filing |
|---|---|---|
| 24.216.254.138<br>January 8 | *7123<br>January 8 | January 23 |
| 50.165.124.194<br>January 8 | *9054<br>January 8 | January 23 |
| 184.183.164.51<br>January 10 | *7977<br>January 10 | January 23 |
| 198.0.77.173<br>January 19 | *9085<br>January 20 | January 23 |
| 50.142.170.68<br>January 20 | *8760<br>January 20 | January 23 |
| 74.92.89.181<br>January 20 | *3725<br>January 20 | January 23 |
| 74.138.119.149<br>January 20 | *4755<br>February 20 | February 20 |
| 45.32.195.62<br>March 4 | *7123<br>January 8 | March 4 |

Over the course of the conspiracy PROPHT-FRANCISQUE and his coconspirators exchanged numerous emails containing large amounts of access devices and PII of various individuals, including names, dates of birth, Social Security numbers, and bank account and credit card numbers, and U.S. passport information. For example, on December 20, 2015, PROPHT-FRANCISQUE emailed CHERELUS two server credentials. On September 1, 2016, CHERELUS emailed PROPHT-FRANCISQUE the names, dates of birth, Social Security

Defendant's Initials _____          21

numbers, and credit scores for two individuals.  On January 17, 20, and February 1,
2016, PROPHT-FRANCISQUE emailed Rich4ever4430 twenty sets of server
credentials.  Throughout February 2016, PROPHT-FRANCISQUE sent several
emails to Rich4ever4430 with a series of tax information (including names, social
security numbers, tax return figures, and bank account numbers).  Some emails had
notations like "DONE-fixed the error" and "redo new pin."  Server credentials were
also included in some of these messages.  One email was titled "NEW 6 LETS GO."
On February 9 and 16, 2016, Rich4ever4430 emailed PROPHT-FRANCISQUE
fourteen sets of server credentials, PII, and tax information of individuals in Texas.
Additionally, on May 2, 2016, PROPHT-FRANCISQUE sent an email to
letsgetmula321@gmail.com, setting forth a tutorial on how to commit synthetic
identity theft.

Information that PROPHT-FRANCISQUE obtained from the Marketplace
and his coconspirators was used to advance the unlawful aims of the Enterprise in
connection with other conspirators and other stolen PII and EFINs.  In this
Enterprise, the conspirators used stolen EFINs to submit false and fraudulent tax
returns in the names of individuals without their knowledge, using stolen PII, and
the conspirators directed those fraudulently obtained refunds to false bank accounts
that the conspirators controlled.  The conspirators would often use the PII stolen
from one firm with an EFIN stolen from a second firm in submitting the fraudulent
returns.

Defendant's Initials ⟨𝒫⟩                    22

*Victims and Losses Attributable to Corrupt Enterprise*

In the course of this corrupt Enterprise, the participants filed 9,214 tax returns using fraudulently stolen PII and EFINs, claiming a total amount of refunds of more than $45 million. The IRS accepted many of these returns, paying an estimated total of more than $6 million in fraudulent refunds. The following reflects an estimation of the total amounts claimed on fraudulent tax returns using stolen EFINs, stolen PII, and EFINs associated with firms like FSL that were created by the members of the Enterprise to advance the fraudulent aims of the Enterprise.

| Entity Whose EFIN was Used | Fraudulent Tax Returns Submitted | Amounts Fraudulently Claimed |
|---|---:|---:|
| Morton Fast Refund (MFR) | 828 | $4,532,354 |
| SC Accounting and Tax Services (SCA) | 303 | $1,558,327 |
| Chantol Multiservices (CMS) | 441 | $2,223,395 |
| Yvelene Tax Services (YTS) | 455 | $2,476,789 |
| FSL Multiservices (FSL) | 664 | $3,099,291 |
| Edvert Tax Prep (EDV) | 1046 | $5,140,673 |
| AAJR Multiservices (AAJR) | 1853 | $6,767,992 |
| Deedee Multiservices (DMS) | 605 | $1,728,728 |
| RP Tax | 67 | $277,827 |
| Victim Firm-1 | 331 | $1,464,738 |
| Victim Firm-2 | 57 | $294,887 |
| Victim Firm-3 | 109 | $551,234 |
| Victim Firm-4 | 175 | $1,145,257 |
| Victim Firm-5 | 214 | $1,577,384 |
| Victim Firm-6 | 219 | $1,143,764 |
| Victim Firm-7 | 147 | $452,150 |
| Victim Firm-8 | 296 | $2,099,859 |
| Victim Firm-9 | 158 | $1,035,240 |
| Victim Firm-10 | 277 | $1,454,602 |
| Self-prepared | 969 | $6,409,684 |
| **TOTALS** | **9,214** | **$45,434,175** |



Based on the evidence and investigation, the Government and the Defendant agree that the readily provable estimation of losses attributable to the Defendant's participation includes the tax refunds fraudulently submitted through Edvert, Victim Firm-1, Victim Firm-4, Victim Firm-8, and SCA.

In all of this conduct, two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity, this unlawful plan affected interstate commerce, PROPHT-FRANCISQUE knowingly and willfully joined in the conspiracy, and, when PROPHT-FRANCISQUE joined in the agreement, PROPHT-FRANCISQUE had the specific intent either to personally participate in committing at least two other acts of racketeering, or else to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

Defendant's Initials _____        24